In the matter of the application of MAX HUNCKE to establish the last will and testament of Richard C. Huncke, deceased.

[Decided December 18th, 1919.]

1. The orphans court is a court of general jurisdiction and has full power and authority to determine all controversies respecting the existence of wills.

2. The burden of showing the existence of a will is on the proponents.

3. In this case, *held*, that proponents have sustained that burden.

4. In considering the uncontradicted testimony of a daughter of the testatrix as to the destruction of a will by a decedent, the element of her interest and benefit must be considered.

---

On application to establish a will.

*Mr. Adolf L. Engelke,* for the appellant.

*Mr. William B. Mackay,* for the respondent.

LEWIS, VICE-ORDINARY.

The proceedings in the court below on this application were taken under section 2, page 715 of the act respecting orphans courts. *P. L. 1898.*

There is no question raised as to the power and authority of the court below to hear the questions involved in the controversy. It is settled that the orphans court is a court of general jurisdiction over the subjects committed to its cognizance, and has full

power and authority to determine all controversies respecting the existence of wills. *In re Matter of John Cassidy's Will, 80 N. J. Eq. 164.*

An appeal has now been taken, and I have examined the state of the case filed in this court; and also have considered the arguments of counsel.

The burden of proving the existence of the will, of course, was with the proponents; and a review of the evidence cannot fail to satisfy one that they have sustained this burden.

The execution and publication of the will of Richard C. Huncke, who died October 30th, 1917, is established beyond doubt. The scrivener, a member of the bar, who drew the will, is among the witnesses. His stenographer corroborates him as to the manner of execution and publication of the will. The testimony of Max Huncke, a brother of the decedent, is persuasive. He is benefited but to a very slight extent by establishing it. A witness, however, who has not the slightest interest, and who may be described as absolutely impartial, is the nurse, Claire Thomas. She is not mentioned in any way in the will, and is not related to the decedent. She was employed, in the ordinary course of her profession, to take care of him. Her evidence, as to the conversation between herself and the decedent, identifies the will to be established in this case. One of the significant features of her testimony, and which must influence the court in reaching the conclusion that the will was in existence at the time of Richard Huncke's death, is the statement of the testator to her, in reply to the question: "Did the will provide for the sister who is taking care of you?" and Huncke said: "Yes, I have left her a nice big house; I guess she will be all right." His will contains this provision.

The testimony of the respondent, Mrs. Ida V. Enders, is, that the will which is sought to be established was destroyed by the decedent on October 22d, 1917. The testimony as to the circumstances of the destruction is uncorroborated. The testimony of Max Huncke is, that after the funeral of the decedent he telephoned to Ida V. Enders, and that she asked him if he had found the will, and that he replied, "No;" and that Mrs. Enders then said, "Well, papa most likely," or, "perhaps," "has destroyed it;"

and it would appear that if the will had been destroyed in the manner described in her testimony, she would then and there have informed Max Huncke concerning this fact. The element of interest and benefit must be considered in viewing her uncorroborated testimony. In case of the intestacy of Richard C. Huncke, she, his daughter, would be the heir-at-law.

In examining this case I think that the effect of the will to be established should be considered. Its provisions are not unreasonable and cannot be said to be unfair to the heir-at-law. His benefactions are general, and there is nothing in the evidence that indicates that he has forgotten anyone that he would naturally remember. His gift under the will to his brother, Max Huncke, the petitioner in this cause, is simply of a victrola and victrola records. This gift in itself would not lead him to be greatly interested in establishing the will, or in provoking a controversy over it.

His bequest to Bertha Arnold, with whom it is alleged he has been on intimate terms since the death of his wife, of the automobile and French clock is not a large gift; and the same statement applies also to the gold watch and chain bequeathed to George Huncke, and the diamond pin to his friend Elimer Thomssen.

Under the sixth clause he devised certain land to his daughter.

Under the seventh clause he gives the dwelling-house, in which he resided at the time of the making of the will, to his wife.

Under the eighth clause he devised certain property to his sister.

The will on its face appears to be a fair one. The evidence is, that the testator and his wife had lived apart and were estranged for twenty years.

The learned trial judge of the orphans court who heard this case had the benefit of the appearance before him of the witnesses themselves; and in his opinion he reaches the conclusion that a decree must be entered establishing the will; and, as I agree with him in this view, the decree below will be sustained.